UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
KANSAS CITY DIVISION

FRED NEKOUEE, individually,              :
                                         :
              Plaintiff,                  :
                                         :
vs.                                      :   Case No. 2:19-cv-02773-JAR-JPO
                                         :
PRIVITERA REALTY HOLDINGS, L.L.C.,       :
a Missouri limited liability company; and :
                                         :
COSENTINO GROUP, INC., a Kansas          :
corporation;                             :
                                         :
              Defendants.                 :
_____/

## FIRST AMENDED COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendants, PRIVITERA REALTY HOLDINGS, L.L.C., a Missouri limited liability company; and COSENTINO GROUP, INC., a Kansas corporation; sometimes referred to as "Defendants"); for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.     Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.     Defendant PRIVITERA REALTY HOLDINGS, L.L.C. owns the Rosana Square shopping center with an address of 7720 W. 119th Street, Overland Park, Kansas 66213, in Johnson County ("Rosana Square").

3.     Defendant COSENTINO GROUP, INC.'s store, Price Chopper, with an address of

7418 W. 119th Street, Overland Park, Kansas 66213, is located in Rosana Square ("Price Chopper").

4.     Hobby Lobby, with an address of 7104 W. 119th Street, Overland Park, Kansas 66213, is located in Rosana Square ("Hobby Lobby").

5.     Schmitt Music is located in Rosana Square.

6.      Venue is proper in the District of Kansas because venue lies in the judicial district of the situs of the Rosana Square.   The Defendants' Rosana Square and Price Chopper are located in and do business within this judicial district.

7.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

8.     Defendants each own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

9.     Rosana Square is a shopping center.

10.    Rosana Square is a place of public accommodation.

11.    Price Chopper is a grocery store.

12.    Price Chopper is a place of public accommodation.

13.    Hobby Lobby is a place of public accommodation.

14.    Schmitt's Music is a place of public accommodation.

15.    Defendants are each responsible for complying with the obligations of the ADA.

16.    Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple

sclerosis, weak limbs, and requires the use of a wheelchair for mobility.

17.     Mr. Nekouee travels to the Kansas City area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who live in such area.

18.     Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Rosana Square which forms the basis of this lawsuit on March 29, 2018; May 11, 2019; and September 15, 2019; and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to and convenient to the heavy equipment auction and dealerships, and to his uncle and cousin he visits in the Kansas City area.

19.     He visited the Kansas City area in March 2018, July 2018, February 2019, May 2019 and September 2019 and he has plans to return to the Kansas City area in March 2020.

20.     Fred Nekouee visited and bought goods at Price Chopper on March 29, 2018; May 11, 2019; and September 15, 2019.

21.     Fred Nekouee visited and bought goods at Hobby Lobby on March 29, 2018 and on May 11, 2019.

22.     Fred Nekouee plans to return to Rosana Square to avail himself of the goods and services offered to the public at Rosana Square, Price Chopper, and Hobby Lobby.

23.     The Plaintiff has definite plans to return to the area and to Rosana Square, Price Chopper, and Hobby Lobby in March 2020.

24.     The Rosana Square, Price Chopper, and Hobby Lobby are close to the hotels he stays at in the area and are close to the heavy equipment auction and dealerships he visits.

25.     The Plaintiff likes the broad range of craft and hobby items for sale at Hobby Lobby

in Rosana Square.

26.     The Plaintiff plans to return to Hobby Lobby to shop.

27.     The Plaintiff likes the groceries at Price Chopper, and likes to take grocery items back to his hotel.

28.     The Plaintiff plans to return to Price Chopper to buy groceries.

29.     For the reasons set forth in paragraphs 17-28 and 42, Fred Nekouee plans to return to the Rosana Square.

30.     The Plaintiff has encountered architectural barriers at Rosana Square.

31.     The barriers to access that the Plaintiff encountered at Rosana Square have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access Rosana Square, and have impaired his use of the restrooms there.

32.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

33.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

34.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

35.     On his visit to Rosana Square, the Plaintiff encountered excessively steep slopes in its parking lot.

36.     The cross slopes of the access aisles serving the parking spaces for disabled patrons in front of Hobby Lobby and Price Chopper are steeper than 1:48 and also steeper than 3.1%.

37.     The cross slope of the walking surface in front of Price Chopper on the accessible

route to the entrance of Price Chopper is steeper than 1:48 and also steeper than 3.1%.

38.     The Plaintiff encountered and observed barriers to access in the men's restroom in Price Chopper.

39.     The Plaintiff encountered and observed barriers to access in the men's restroom in Hobby Lobby, so he tried to use the women's restroom in Hobby Lobby.

40.     The Plaintiff is deterred from visiting Rosana Square even though he enjoys its goods, because of the difficulties he will experience there until Rosana Square is made accessible to him in a wheelchair.

41.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to Rosana Square as described but not necessarily limited to the allegations in paragraph 47 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

42.     Fred Nekouee desires to visit Rosana Square not only to avail himself of the goods and services available at Rosana Square but to assure himself that Rosana Square is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of Rosana Square without fear of discrimination.

43.     The Defendants have discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

44.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of

$500,000 or less).

45.     Physical conditions that exist at Rosana Square are accurately described in each romanette "(i)" in each lettered subparagraph of paragraph 47 below

46.     Preliminary inspections of Rosana Square show that violations of the ADA exist as set forth in paragraph 47 below.

47.     The violations of the ADA that Fred Nekouee personally encountered or observed at Rosana Square include, but are not limited to:

**PARKING**

a.   (i) In the parking lot, one of the parking spaces for disabled patrons in front of Schmitt Music does not have upright signage with the International Symbol of Accessibility.   (ii) As shown in the photograph below, there are no upright signs with the International Symbol of Accessibility for this parking space, in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   (iii) The Plaintiff observed this lack of upright signage, it made it more difficult for him to find an accessible parking space, and it deters him from visiting the Rosana Square.   (iv) The action required to install upright signage with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.



b.    (i) In the parking lot, there are no parking spaces for disabled patrons with signage with the words "van accessible" in front of Hobby Lobby.   (ii) This lack of van accessible signage is in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iii) The Plaintiff observed this lack of van accessible signage, it made it difficult for him to find a van accessible parking space, and it deters him from visiting the Rosana Square.   (iv) The action required to install upright signage with the words "van accessible" is easily accomplishable and able to be carried out without much difficulty or expense.

c.    (i) In the parking lot, there are no parking spaces for disabled patrons with signage with the words "van accessible" in front of Price Chopper.   (ii) This lack of van accessible signage is in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iii) The

Plaintiff observed this lack of van accessible signage, it made it difficult for him to find a van accessible parking space, and it deters him from visiting the Rosana Square.   (iv) The action required to install upright signage with the words "van accessible" is easily accomplishable and able to be carried out without much difficulty or expense.

    d.   (i) In the parking lot in front of Price Chopper, the parking space for disabled patrons shown in the photographs below has a cross slope steeper than 1:48 and steeper than 3.1%.   (ii) This section of the parking space for disabled patrons has a cross slope steeper than 1:48 and steeper than 5%, in violation of Federal Law 2010, ADAAG § 502.4. (iii) While moving in his wheelchair, the Plaintiff encountered this slope and it made his wheelchair unstable, and it deters him from visiting the Rosana Square.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.





e.   (i) In the parking lot in front of Hobby Lobby, the parking space for disabled patrons shown in the photograph below has a cross slope that is steeper than 1:48 and stepper than 3.1%.   (ii) This parking space for disabled patrons has a cross slope steeper than 1:48 and as steep as about 4%, in violation of Federal Law 2010, ADAAG § 502.4. (iii) The Plaintiff encountered the slope of this parking space for disabled patrons, it made his wheelchair unstable, and it deters him from visiting the Rosana Square and Hobby Lobby.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



f.    (i) In the parking lot in front of Hobby Lobby, parking space for disabled patrons in front of Hobby lobby shown in the photograph below has a change of level greater than 0.5 inches.   (ii) This change of level in this parking space is greater than 0.5 inches, in violation of Federal Law 2010, §§ 502.4 and 303.3.   (iii) The Plaintiff encountered this change of level in this parking space and it made it difficult for him to maneuver his wheelchair while loading and unloading from his vehicle.   (iv) The action required to reduce this change of level of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



g.    (i) In the parking lot in front of Hobby Lobby, the access aisle serving the parking

spaces for disabled patrons has a cross slope steeper than 1:48 and steeper than 3.1%.   (ii)

This access aisle has a cross slope steeper than 1:48 and as steep as about 4%, in violation

of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered the slope of this

access aisle for disabled patrons, it made his wheelchair unstable, and it deters him from

visiting Rosana Square and Hobby Lobby.   (iv) The action required to reduce the slope of

this access aisle is easily accomplishable and able to be carried out without much difficulty

or expense.

h.    (i) The walking surface or sidewalk in front of Hobby Lobby on the route towards

the entrance door has a change of level greater than 0.5 inches.   (ii) This walking surface

contains a change of level of greater than 0.5 inches around the metal meter cover, in violation of Federal Law, ADAAG § 303.3.   (iii) While moving in his wheelchair along the accessible route to Hobby Lobby, the Plaintiff encountered this change of level and he had to maneuver around it to avoid tipping his wheelchair over.   (iv) The action required to reduce this change in level is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) The section of the walking surface in front of Price Chopper shown in the photographs below on the route towards the entrance has a change of level greater than 0.5 inches.   (ii) This walking surface contains a change of level of greater than 0.5 inches, in violation of Federal Law, ADAAG § 303.3 and 502.4.   (iii) While moving in his wheelchair along the accessible route to Price Chopper, the Plaintiff encountered this change of level and he had to maneuver around it to avoid tipping his wheelchair over. (iv) The action required to reduce this change in level is easily accomplishable and able to be carried out without much difficulty or expense.





j.    (i) The walking surfaces in front of Schmitt Music, Godvari, Papa Murphy's Pizza, and All About Fitness at Rosana Square have cross slopes steeper than 1:48 and steeper than 3.1%.   (ii) These walking surfaces have cross slopes steeper than 1:48 and steeper than 3.1%, in violation of Federal Law, ADAAG § 403.3.   (iii) When visiting a shopping center like Rosana Square, the Plaintiff likes to window shop.   The Plaintiff encountered these cross slopes of these walking surfaces and they made his wheelchair unstable.   These cross slopes of these walking surfaces in front of these stores at Rosana Square deter him from visiting Rosana Square.   (iv) The action required to reduce the cross slopes of these walking surfaces is easily accomplishable and able to be carried out without much difficulty or expense.

**CUSTOMER SERVICE AREA INSIDE PRICE CHOPPER**

k.     (i) A portion of the customer service counter in Price Chopper whose surface is 36 inches long minimum and 36 inches high maximum above the floor is not provided. (ii) A portion of the customer service counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is not provided and the entire counter surface is about 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 904.4.1.   (iii) Due to the height of this counter surface above the floor, the Plaintiff tried but could not use this counter surface from his wheelchair.   (iv) The action required to provide a portion of  this counter surface that is accessible is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN PRICE CHOPPER**

l.     (i) The force needed to open the entrance door to the men's restroom in Price Chopper is greater than 5 pounds.   (ii) The force needed to open the entrance door to Price Chopper is about 18.5 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door, the Plaintiff required assistance in his wheelchair to open this door to enter the men's restroom in Price Chopper.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

m.     (i) The length of time for the entrance door to the men's restroom in Price Chopper to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The length of time for the entrance door to the men's restroom in Price

Chopper to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short time for this entrance door to the men's restroom in Price Chopper to close, this door closed on his wheelchair before the Plaintiff could not make it through the door.   (iv) The action required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

n.   (i) In Price Chopper, the men's restroom does not have signage with the International Symbol of Accessibility.   (ii) As shown in the photograph below, this restroom does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   (iii) The Plaintiff observed and encountered this lack of signage with the International Symbol of Accessibility and it serves as a barrier to access since it is not apparent that this restroom is accessible, and it deters him from buying groceries at Price Chopper and from visiting Rosana Square.   The women's restroom in Price Chopper also does not have signage with the International Symbol of Accessibility.   (iv) The action required to install signage at the entrance to this men's restroom with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.



o.   (i) In the men's restroom in Price Chopper, the restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 18 inches.   (ii) The men's restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum required clearance of 18 inches and is only about 5 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of maneuvering clearance, the Plaintiff required assistance to exit this restroom.   (iv) The action required to increase this clearance space by moving the door frame is easily accomplishable and able to be carried out without

much difficulty or expense.

p.      (i) In the men's restroom in Price Chopper, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and is as high as about 45 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3. (iii) Due to the height of this mirror's reflecting surface above the finish floor, the Plaintiff could not see his full face in this mirror while sitting in his wheelchair.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

q.      (i) In the men's restroom in Price Chopper, a door pull is not provided on both sides of the door to the toilet compartment near the latch.   (ii) A door pull is not provided on both sides of this door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on the door to the accessible toilet compartment, the Plaintiff could not fully close the door when he used the toilet.   (iv) The action required to install door pulls on both sides of the door to the accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

r.      (i) In the men's restroom in Price Chopper, the width of the accessible toilet compartment is less than 60 inches wide.   (ii) This accessible toilet compartment width is less than the required minimum width of 60 inches and is only about 40 inches wide, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.   (iii) Due to the narrow width of this toilet compartment for use by disabled individuals, the Plaintiff could not maneuver his wheelchair in it, and he required assistance to position himself to use the

toilet.   (iv) The action required to install an ADA compliant toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

s.    (i) In the men's restroom in Price Chopper, the rear wall grab bar in the accessible toilet compartment does not extend a minimum of 12 inches on one side and 24 inches on the other side.   (ii) The rear wall grab bar in this accessible toilet compartment does not extend a minimum of 12 inches on one side and 24 inches on the other side, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to the position of this rear wall grab bar, the Plaintiff had even more difficulty transferring himself to the toilet from his wheelchair. (iv) The actions required to increase the width of the accessible toilet compartment and to relocate or to install a new rear wall grab bar are easily accomplishable and able to be carried out without much difficulty or expense.

t.      (i) In the men's restroom in Price Chopper, the side wall grab bar does not extend a minimum of 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum of 54 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the lack of extension from the rear wall, the Plaintiff had even more difficulty transferring himself from his wheelchair to the toilet and back again. (iv) The action required to relocate or install a side wall grab bar that extends a proper distance from the rear wall is easily accomplishable and able to be carried out without much difficulty or expense.

u.    (i) The centerline of where the toilet paper is dispensed in the men's restroom in Price Chopper is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of where the toilet paper is dispensed from this toilet paper dispenser is not between 7 and 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.

18

(iii) Due in part to the location of this toilet paper dispenser, the Plaintiff tried but could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate and install an ADA compliant toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the men's restroom in Price Chopper, the distance from the centerline of the toilet to the side wall is not between 16 inches minimum and 18 inches maximum.   (ii) The distance from the centerline of the toilet to the side wall is not between 16 inches minimum and 18 inches maximum and such centerline of the toilet is about 20 inches from the side wall, in violation of Federal Law 2010, ADAAG § 604.2.   (iii) Due to the location of the centerline of this toilet from the side wall, the Plaintiff even had more difficulty trying to use the toilet paper dispenser and the side wall grab bar.    (iv) The action required to relocate this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

w.    (i) In the men's restroom in Price Chopper, the paper towel dispenser outlet is higher than 48 inches above the floor.   (ii) This paper towel dispenser outlet is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) Due to the height of this paper towel dispenser outlet above the floor, the Plaintiff tried but could not dispense a towel from it that was not already hanging from it from a prior user.   (iv) The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

48.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design,

as promulgated by the U.S. Department of Justice.

49.     The discriminatory violations described in paragraph 47 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure areas to which barriers prevented his access.

50.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' building and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

51.     Defendants have discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

52.     Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

53.     Plaintiff is without adequate remedy at law and is suffering irreparable harm.

Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

54.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

55.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

56.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

57.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter Rosana Square and Price Chopper, the parking lot, access aisles and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA;

or by closing the facilities until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby

designates Kansas City, Kansas as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (KS #14101)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*